# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Court File No. 12-CR-196 (DWF/TNL) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| Phillip Anthony Roberts, | |
| Defendant. | |

Jeffrey S. Paulsen, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 300 S. 4th Street Suite 600, Minneapolis, MN, for the United States of America.

Barry V. Voss, **BARRY V. VOSS, PA**, 527 Marquette Ave S. Suite 1050, Minneapolis, MN, for Defendant

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Phillip Anthony Roberts' Motion to Suppress Evidence Resulting from an Illegal Search and Seizure (Doc. No. 20) and Motion to Suppress Statements (Doc. No. 21). These matters have been referred to this Court for Report and Recommendation.

The Court heard oral argument on September 5, 2012. Jeffrey Paulsen appeared on behalf of the Government, and Barry Voss appeared on behalf of Defendant. The Court heard testimony from Sergeant Bryant Gaden and Officer Chad DeGree of the St. Paul Police Department. The following Government Exhibits were offered and received: Exhibit 1 is a copy of the St. Paul Police Department policy regarding inventory searches

of vehicles; Exhibit 2 is a completed *Miranda* waiver form signed by Defendant; and Exhibit 4 is a St. Paul Police Department towed vehicle report. The parties filed written submissions to the Court subsequent to the hearing, the last of which was filed September 27, 2012.

## II. FINDINGS OF FACT

On June 27, 2012, at approximately 11:50 a.m., St. Paul Police were alerted to a shooting at the intersection of Concordia and Chatsworth. Docket Nos. 31, 32. A man had walked up to a tan Chevrolet Tahoe and repeatedly fired at the three men inside. Tr. 11. Two of the occupants, Brandon and Duane Billups, were shot. Tr. 10. Witnesses described the shooter as a black male, six feet tall, less than 200 pounds, wearing a white shirt and tan shorts some something covering the lower half of his face. Tr. 11. One witness described the shooter as wearing a red cap and braids; other witnesses described him as wearing a white cap or did not mention a cap. Tr. 54. Witnesses also described a black Chrysler leaving the scene at a high rate of speed. Tr. 15, 29.

Police transmitted over the radio that a black Chrysler left the area of the shooting traveling eastward at a high rate of speed. Tr. 15; Mem. in Opp'n Ex. A at 1. Officer Lesedi, a St. Paul Police officer canvassing the area, saw a black Chrysler 300 traveling east about seven blocks from the scene moments after the shooting. Tr. 13-14, 16; Mem. in Opp'n Ex. A at 1. Officer Lesedi stopped the Chrysler, which was being driven by Defendant. Tr. 13-14. Officer Lesedi ordered Defendant out of the car and identified him. Tr. 14, 31, 37; Mem. in Opp'n Ex. A at 2. After holding him for a short time, Officer Lesedi let Defendant leave. Tr. 37.

On July 3, police received an anonymous tip that a black male named Phillip who went by the name "Philco" might have been involved with the June 27 shooting. Tr. 17. The tipster furnished police with a photograph of Phillip and his girlfriend, who they were able to identify as Nicole Ransom. Tr. 17-18. Working from this tip, police found a report regarding a domestic between Nicole Ossei a/k/a Ransom and Defendant. Tr. 18-19. They also found a Ramsey County Sheriff's Office booking photograph of Defendant, compared it to the photograph that the tipster provided, and determined they were photos of the same person. Tr. 19; Docket No. 32. Investigating officers learned from the Gang Unit that Defendant uses the street name "Philco." Tr. 40.

Officers then created a photo lineup containing Defendant's booking photograph to show to victims and witnesses of the June 27 shooting. *Id.* One witness to the shooting positively identified Defendant as the shooter. Tr. 46-47. The witness was able to identify Defendant as the shooter despite his face being partially covered because they knew each other from the neighborhood. Tr. 46. Based on this information, the St. Paul Police issued a pick-up notice for Defendant pursuant to Minnesota Statute 629.34, subdivision 1(c).

On July 11, Officers DeGree and Omari were on patrol and recognized a man they knew to be Defendant driving a black Tahoe. Tr. 63. They stopped the car and arrested Defendant, who was the only person in the car, pursuant to the pick-up notice. Tr. 65-66. Because the vehicle had to be towed, the officers performed an inventory search of the car pursuant to St. Paul Police Department Policy. Tr. 66-67; Gov't Ex. 1. During this search, they found a handgun hidden in the center console. Tr. 67.

On July 12, Sergeant Bryant Gaden of the St. Paul Police Department interviewed Defendant. At the beginning of the interview, Sergeant Gaden gave Defendant a *Miranda* form that lists an interviewee's rights under *Miranda v. Arizona*. Gov't Ex. 2. Defendant initialed next to each of the four *Miranda* warnings to indicate that he had been read those rights and understood them. *Id.*

Sergeant Gaden proceeded to interview Defendant about the June 27 shooting, and Defendant denied being involved. Tr. 49. Defendant did not request the presence of a lawyer or ask that the interview be terminated. Tr. 56. The interview lasted about fifteen minutes. Tr. 56; Ex. B. When Sergeant Gaden thought the interview was finished, he asked if Defendant had any questions. *Id.* Defendant had no questions, so Sergeant Gaden indicated that the interview was over for purposes of the recording and then turned off the audio recorder. Tr. 49, 50. After the recorder had been turned off, Defendant voluntarily told Sergeant Gaden that he had the gun for protection. Tr. 51.

## III. ANALYSIS

Defendant moves to suppress all evidence seized in the July 11 inventory search of his car and his custodial statement regarding possession of the firearm on the basis that A) police lacked reasonable suspicion to stop Defendant on June 27, and therefore any evidence seized therefrom could not be relied upon to establish probable cause; and B) police lacked probable cause to arrest Defendant on July 11, and therefore the fruits of the subsequent inventory search and custodial interrogation must be suppressed.

### A. June 27 Traffic Stop

An officer may perform an investigatory stop, also called a *Terry* stop, on a vehicle only when "the officer has reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Neufeld-Neufeld*, 338 F.3d 374, 378 (5th Cir. 2003) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)); *see also Terry v. Ohio*, 392 U.S. 1 (1968). This inquiry "is not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Huerta*, 655 F.3d 806, 809 (8th Cir. 2011) (quotation and citation omitted). "[T]he police must point to particular facts and inferences rationally drawn from those facts that, when viewed under the totality of the circumstances and in light of the officer's experience, create a reasonable suspicion of criminal activity." *United States v. Weaver*, 966 F.2d 391, 394 (8th Cir.), *cert. denied*, 506 U.S. 1040 (1992).

Defendant argues that Officer Lesedi did not have reasonable suspicion to stop his vehicle on June 27. The Court disagrees. A radio dispatch transmitted that a black Chrysler left the scene of a multiple shooting heading eastbound at a high rate of speed. Officer Lesedi observed a black Chrysler traveling eastbound shortly after the shooting and just seven blocks from where the shooting occurred. This information is a sufficient basis on which Officer Lesedi could reasonably suspect that the driver had been involved with the shooting in some manner.

The Eighth Circuit addressed a similar scenario in *United States v. Juvenile TK*. 134 F.3d 899 (8th Cir. 1998). There, the officers received two dispatches over the course of an hour that a man had displayed a gun and driven away in a gray vehicle. *Id.* at

900-01. Shortly after the second dispatch, the officers observed a gray vehicle near the scene of the second reported crime. *Id.* at 901. The officers stopped the gray car, and the defendant was subsequently arrested for violating curfew and public intoxication. *Id.* At the time of the stop, "the only descriptions that [the officers] had received were of a gray car and a man with a gun." *Id.* The Eighth Circuit reasoned:

> [I]n light of the totality of the circumstances in the instant case and, in particular, the *short distance between the location of the stop and the crime scene*, the *short period of time between the stop and the officers' reception of the second dispatch*, the time of the stop, *and the allegations of conduct that was clearly criminal*, we hold that there was reasonable suspicion to support the investigative stop.

*Id.* at 904 (emphasis added).

This scenario closely parallels Officer Lesedi's stop on June 27. She received a dispatch that a black Chrysler was seen leaving the scene of a multiple shooting traveling east at a high rate of speed. Moments later, she spotted a black Chrysler traveling east a few blocks from the shooting. Indeed, Officer Lesedi had more information than the officers in *Juvenile TK* in that she knew the make of the car and the direction it was traveling in addition to its color. *Compare United States v. Jaquez*, 421 F.3d 338, 341 (5th Cir. 2005) (finding that no reasonable suspicion existed where officer knew only that "a red vehicle" had been involved in a reported incident 15 minutes earlier), *and United States v. Hall*, 557 F.2d 1114, 1116 (5th Cir. 1977) (finding reasonable suspicion existed where officers had been told to look for a "red 1969 two-door Ford" shortly after an armed bank robbery). Taking all these factors into account, Officer Lesedi had sufficient facts to form a reasonable suspicion that the driver of the Chrysler had just committed a

crime. Therefore, the investigatory stop on June 27 did not violate Defendant's Fourth Amendment rights.[1]

### B. Probable Cause for the July 11 Arrest

Defendant also challenges his July 11 arrest, arguing that police did not have probable cause. Probable cause exists if the facts and circumstances within the officers knowledge are sufficient to warrant a belief that the suspect has committed, is committing, or is about to commit an offense. *United States v. Bobo*, 994 F.2d 524, 527 (8th Cir. 1993) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). Whether probable cause exists depends on the totality of the circumstances and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 238, 244 n.13 (1983).

Defendant argues that Sergeant Gaden's reliance on an anonymous tipster and an unidentified confidential informant is not supported by sufficient indicia of reliability to support a finding of probable cause. (Mem. in Supp. at 8-9.) Sergeant Gaden, however, relied on more than just an anonymous tipster and a confidential informant. Eyewitnesses to the June 27 shooting gave police a physical description of the shooter. An anonymous tipster identified Defendant as being involved in the shooting and furnished a picture of him with his girlfriend. The tipster also referred to Defendant as

---

[1] During the June 27 stop, Officer Lesedi photographed a tattoo on Defendants upper arm, and had Defendant lift his shirt so that she could photograph a tattoo on his upper back. Tr. 14, 31, 37. The existence of probable cause found by the Court in this Report and Recommendation is not based on the photographs taken of Defendant on June 27. Moreover, the Court notes that the Government has stated that it will not use these photographs in its case in chief. Mem. in Opp'n at 6. Accordingly, the Court need not address what if any Fourth Amendment issues arise from a police officer taking pictures of a Defendant during the *Terry* stop on June 27.

"Philco," which members of the Gang Unit confirmed as Defendant's name on the street. Police compared a booking photograph of Defendant with the photograph the anonymous tipster provided and determined they were of the same person. An eyewitness to the shooting later identified Defendant in a photo lineup and also told officers that Defendant was the shooter.

The Eighth Circuit addressed similar facts in *United States v. Bobo*, 994 F.2d 524 (8th Cir. 1993). In that case, St. Paul police officers were investigating a shooting outside the Metro Bar in St. Paul. *Bobo*, 994 F.2d at 525. Two anonymous tipsters told police that "Hanky" Bobo was paid to kill the victim. *Id.* Later, the police interviewed a reliable confidential informant who told them that a certain El Rukn gang member witnessed the shooting and stated that someone paid "Hanky" Bobo to kill the victim. *Id.* at 526. Police confirmed through crime scene photographs that an El Rukn gang member was present at the shooting. *Id.* The victim's girlfriend relayed the same information to the police as the confidential informant, and an eyewitness stated that the suspect resembled the man she saw running from behind the victim after the shooting. *Id.* at 525-26. The Eighth Circuit determined that the "'cumulative effect of the facts in the totality of the circumstances'" gave the police probable cause.[2] *Id.* at 527 (quoting *Warren v.*

---

[2] *Bobo* did have an interesting twist. Based on the foregoing, police had probable cause to arrest Marvin Bobo, the defendant Richard Bobo's brother. *See id.* at 526-27. Officers saw a man they thought "closely resembled" the mug shot of their suspect, initiated a traffic stop, and noticed the driver "making motions with his upper body as if he was pulling something out of his waistband and placing it under the seat of the car." *Id.* at 526. The officers realized only after the subsequent arrest that they had associated the nickname "Hanky" with the wrong Bobo brother. But, the probable cause to arrest Marvin gave them sufficient justification to stop Richard when they believed he was Marvin. *Id.* at 527 (citing *Hill v. California*, 401 U.S. 797, 802 (1971)). This difference from the facts in the instant case does not affect the Court's analysis.

*City of Lincoln, Neb.*, 864 F.2d 1436, 1440 (8th Cir.) (en banc), *cert. denied*, 490 U.S. 1091 (1989)).

In this case, eyewitnesses described the shooter as a man matching Defendant's basic physical description. An anonymous informant gave police a picture that he said was of the shooter, referring to him as "Philco," and his girlfriend. Police independently verified that the photo was of Defendant and that he went by the street handle "Philco." *See United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002) (finding that independent police corroboration increased a tip's credibility). An eyewitness to the shooting identified Defendant in a photo lineup and stated that Defendant was involved in the shooting. The cumulative totality of the circumstances is sufficient to warrant a reasonable belief that Defendant had committed a criminal offense. Accordingly, the Court determines that probable cause existed for his arrest.

It should be noted that the existence of probable cause for the July 11 arrest does not take into account, nor does it require, information gathered from the *Terry* stop of Defendant's vehicle on June 27. Police had developed facts sufficient to support a finding of probable cause on July 11 independent of any facts learned from the June 27 stop.

But, assuming *arguendo* that the identification of Defendant from the June 27 *Terry* stop were somehow required to support a probable cause finding, a valid stop under *Terry* permits law enforcement to "conduct an investigation 'reasonably related in scope to the circumstances that justified'" the stop, including asking for identification. *United States v. Ward*, 484 F.3d 1059, 1061 (8th Cir. 2007) (quoting *United States v. Bloomfield*,

40 F.3d 910, 915 (8th Cir. 1994)). Thus, Officer Lesedi's identification of Defendant on June 27 did not violate any Fourth Amendment protections, and police could rely on the identification to formulate probable cause. The same would be true of the fact that on June 27, Defendant was stopped a short distance from the shooting in a vehicle matching one described leaving the scene very quickly, shortly after airing of the incident. In short, with or without the June 27 identification, there was probable cause to arrest Defendant on July 11.

Accordingly, because probable cause existed for Defendant's arrest, the fruits of the subsequent inventory search of his car and his subsequent custodial admission are admissible. *See Colorado v. Bertine*, 479 U.S. 367, 372 (1987) (finding an inventory search constitutional where police follow standardized procedures and do not act in bad faith or for the sole purpose of investigation); *United States v. Gayekpar*, 678 F.3d 629, 638-39 (8th Cir. 2012) (finding a defendant's *Miranda* waiver valid).

## IV. RECOMMENDATION

Based on the foregoing, the memoranda and exhibits of the parties, the arguments of counsel, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motions to Suppress (Docket Nos. 20, 21) be **DENIED**.

Dated:  October 2, 2012  　　　　　　　s/ *Tony N. Leung*
　　　　　　　　　　　　　　　　　　Tony N. Leung
　　　　　　　　　　　　　　　　　　United States Magistrate Judge
　　　　　　　　　　　　　　　　　　for the District of Minnesota

　　　　　　　　　　　　　　　　　　*United States v. Roberts*
　　　　　　　　　　　　　　　　　　File No. 12-cr-196

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **October 17, 2012.**